**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|   |   |
|---|---|
| Warren N. Richards, IV,  ) | No. CV09-00418-PHX-MHM |
| )  Plaintiff, ) | **ORDER** |
| vs. ) | |
| )  Holsum Bakery, Inc.; Flower Foods, Inc.,) | |
| Defendants. ) | |

Defendants, Holsum Bakery, Inc., and Flower Foods, Inc., have filed a Motion For Disqualification of Plaintiff's Counsel for Improper *Ex Parte* Communication in Violation of Ethical Rule 4.2. (Dkt. #42). Because Defendants' motion prays that Plaintiff's counsel be removed from this case, the Court must consider the instant motion before resolving Plaintiff's outstanding Motion to Remand to State Court. (Dkt. #16) and Motion for an Evidentiary Hearing (Dkt. #47).

**I.  BACKGROUND**

On February 9. 2009, Plaintiff Warren N. Richards, IV, filed suit against Defendants in Superior Court of Arizona, Maricopa County, alleging breach of contract and seeking recovery of back salary and healthcare benefits. (Dkt. #1, p.1) On March 02, 2009, Defendants' filed their Joint Notice of Removal, invoking this Court's federal-question jurisdiction arguing that Plaintiff based his claim on Holsum's 2007 employee severance-

benefit plan (the 2007 Plan) governed by the Employee Retirement Income Security Act (ERISA) Id. at 2, 4–7. Defendants filed their respective answers to Plaintiff's complaint on March 03, 2009. (Dkt. #s 5 & 6)

Plaintiff filed his Motion to Remand to a State Court on April 01, 2009, asserting that his claim was not predicated on the 2007 Plan, but on a retention-benefits memorandum (the Memo) sent to him by Holsum Bakery's President Ed Eisele. (Dkt. #16, p.1–2). Plaintiff argues remand is necessary because the Memo is not an ERISA Plan, but a freestanding contract, and, as a result, his claim does not concern federal law. Id. at 3. Two days before Plaintiff's remand motion was due, on March 30, 2009, Defendants filed a Supplement to Joint Notice of Removal, informing the Court that the 2007 Plan had actually been amended by the First Amendment to the Plan (the Amendment), but the Amendment was inadvertently not included in its original removal filing. (Dkt. #15, p.1). In response, on April 01, 2009, Plaintiff filed a Motion to Strike Defendants' supplement motion, arguing, pursuant to 28 U.S.C §1446, that it was untimely. (Dkt. #17). On April 02, 2009, the Court granted Plaintiff's Motion to Strike and vacated the Rule 16 scheduling conference pending its decision on the Motion to Remand. (Dkt. #20).

Despite the Court's Order, Defendants' Response to Plaintiff's Motion to Remand (Dkt. #21) and Plaintiff's Reply (Dkt. #27) devote considerable time discussing the Amendment. Defendants' argued that the Memo merely summarized the retention-benefits program set forth in the Amendment, (Dkt. #21, p.14), while Plaintiff argued that Holsum Bakery never implemented the Amendment. (Dkt. #27, p.2–7). The controversy over the Amendment did not dissipate, and on May 13, 2009, Defendants filed a Motion for Protective Order and/or Motion to Quash. (Dkt. #32). The Motion stemmed from Plaintiff's attempts, over the objection of Defendants, to depose Holsum employees Nichole de Parra, Ed Eiselle, and Frank Coffey concerning the Amendment. Id. at 2–4. On June 02, 2009, this Court granted in part and denied in part Defendants' motion, allowing limited written discovery concerning subject matter jurisdiction (i.e. the Amendment) to be completed within twenty days of the Court's order, with any motions for an evidentiary hearing to be filed no later

1 | than ten days after that. (Dkt. #39). Plaintiff filed a Motion for Evidentiary Hearing on July 7, 2009. (Dkt. #47).

## II. MOTION TO DISQUALIFY COUNSEL

On June 12, 2009, Defendants filed the instant Motion to Disqualify Counsel. (Dkt. #42). In their motion, Defendants ask this Court to disqualify the law firm of Baird, Williams, & Greer L.L.P., for named partner Daryl Williams' violation of Arizona Ethics Rule 4.2 (Rule 4.2). They allege that Mr. Williams violated Rule 4.2 by arranging and attending a breakfast-meeting with current Holsum-Bakery employee, Nichole de Parra, and his client, Warren Richards. At this April 24, 2009, meeting, Defendants claim Mr. Williams questioned Ms. de Parra on issues directly involving the litigation and induced her to sign a written statement concerning those issues. Id. at 3–4. Defendants further allege that Mr. Williams took steps to conceal his communications with Ms. de Parra by failing to give Defendants or Ms. de Parra a copy of her signed statement, and by failing to disclose the dinner meeting or signed statement when he contacted counsel on April 30, 2009, about arranging Ms de Parra's deposition. Id.

Plaintiff does not dispute the underlying facts of Defendants' motion. In his reply (Dkt. #45), Plaintiff admits that he, Mr. Williams, and Ms. de Para, met at a restaurant on April 24, 2009, where Mr. Williams questioned Ms. de Para about her role at Holsum Bakery and her knowledge of the Amendment. Id. at 2, 4. Plaintiff also agrees that Mr. Williams asked Ms. de Para to write and sign an affidavit concerning the information she shared with him and his client during the meeting. Id. at 5. While Plaintiff does not dispute the facts, he vehemently disputes Mr. Williams' actions were violative of Rule 4.2. See id.

### A. Arizona Rule of Professional Conduct 4.2

Local Rule 1.6(d) provides that "[t]he 'Rules of Professional Conduct' as set forth in Rule 42 of the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys admitted to practice before the United States District Court for the District of Arizona." Arizona Rule of Professional Conduct 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rule 4.2 is intended to "(1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement." Lang v. Superior Court, 170 Ariz. 602, 604 (App. 1992) (citing Polycast Technology Corp. v. Uniroyal, Inc., 129 F.R.D. 621, 625 (S.D.N.Y. 1990)).

When an organization is one of the litigants—as is the case here—three categories of employees qualify as "parties" for the purpose of the rule: "(1) those having a managerial responsibility on behalf of the organization; (2) any person whose act or omission in connection with the matter may be imputed to the organization; and (3) any person whose statement may constitute an admission on the part of the organization." Id. at 604–605 (citing with approval Comment 2 of Rule 4.2, which sets forth the three categories).[1]

Because the Parties do not dispute that an *ex-parte* contact took place, this Court must determine if Ms. de Para falls within one or more of groups of prohibited individuals. Defendants do not argue that Ms. de Para's act or omission relates to the matter in dispute; this appears to be correct. See (Dkt. #45, ex. A, ¶10). Accordingly, category two is not applicable. Instead, Defendants' allegations focus on groups one and three, arguing that Mr. Williams violated Rule 4.2 because Ms. de Para exercises managerial responsibilities and

---

[1] Plaintiff contends that the test for whether an employee or former employee of an organization is a "party" under Rule 4.2 is the "functional" test set forth in Samaritan Foundation v. Goodfarb. 176 Ariz. 497, 862 P.2d 870 (1993). This is incorrect. In Samaritan the Arizona Supreme Court adopted a functional approach to determine whether statements of corporate employees are covered by corporate attorney-client privilege. Id. at 879. The case had nothing to do with Rule 4.2. Its one and only reference to Rule 4.2 is dicta, at best. Id. at 879–880. And, adopting the "functional approach" as to Rule 4.2 would force this Court to ignore the Lang court's very clear use of the three-category approach that is based on Rule 4.2's comments. This, it will not do.

because her statements could be used against them as a party admission. The Court will consider each of these assertions in turn.

### B. Managerial Responsibility

Rule 4.2 and its comments do not define the phrase "managerial responsibility," and the Parties have not directed this Court to any Ninth Circuit or Arizona authority providing a definition. Indeed, another court in this Circuit has commented that "the parameters of the term 'managerial responsibility' are unclear."[2] Palmer v. Pioneer Hotel & Casino, 19 F.Supp.2d 1157, 1162 (D.Nev. 1998). In Lang, however, the Arizona Court of appeals states, without citation, that "managerial employees may act for and/or bind the organization." 170 Ariz. at 605. Although it is not completely clear, the Lang court seems to suggest that an employee has managerial responsibility when he has the ability to act for or bind the organization. Id. This view is supported by the fact that the Lang court's language closely mirrors the "managing-speaking" test employed by Nevada and Washington regarding their identical Rule 4.2 ethical provisions. See Palmer v. Pioneer Inn Associates, Ltd., 118 Nev. 943 (2002); Wright v. Group Health Hospital, 103 Wash.2d 192, 691 P.2d 564 (Wash. 1984); see also Weeks v. Independent School Dist. No. I-89, 230 F.3d 1201, 1209 (10th Cir. 2000) (embracing the managing-speaking test). Under the managing-speaking test, "employees should be considered 'parties' for the purposes of the disciplinary rule if, under applicable [state] law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation." Wright, 691 P.2d at 569 (citations omitted). In these states, however, the managing-speaking test has replaced the three-category comments-based test altogether. Palmer, 118 Nev. at 961–62. Arizona, has not yet adopted

---

[2]In the 2002 edition of the Model Rules of Professional Conduct, the American Bar Association, perhaps trying to address the ambiguity of the phrase "managerial responsibility", changed the applicable comment so that it now "prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter." American Bar Association, Model Rules of Professional Conduct, http://www.abanet.org/cpr/mrpc/rule_4_2_comm.html. Arizona, however, has not adopted this revision to Rule 4.2.

such an approach; the <u>Lang</u> case clearly endorses the three-category test, but seems instead to use an approximation of the managing-speaking test to define the managerial responsibility category. 170 Ariz. at 605; <u>see</u> also <u>Palmer</u>, 19 F.Supp.2d at 1157 (applying managing-speaking test to more clearly define comment's "managerial" category, but reasoning that other categories of former comment still apply). Accordingly, this Court must decide whether Ms. de Para, at the time of the *ex-parte* contact, had the authority to act for or bind Holsum Bakery.

At the time of the *ex-parte* contact, Ms. de Para was Holsum's Assistant Director of Human Resources. (Dkt. #46-1, ex. A, ¶4). According to her declaration, Ms. de Para is responsible for overseeing or supervising many of Holsum's human-resource related programs, including its 401K and pension plans, health and life insurance administrations, affirmative action compliance, employee recruitment, employee leaves and absences, payroll administration, and plant safety preventative measures under OSHA. (Dkt. #42-1, ex.1,¶5). As part of her employment recruitment responsibilities, Ms. de Para interviews and screens applicants and develops job descriptions. <u>Id.</u> Additionally, when Holsum is faced with a lawsuit, Ms. de Para works with its directors and legal counsel to secure appropriate and necessary documentation. <u>Id.</u> at, ex.1,¶5, 10. Also, according to the Declaration of Donald A. Thriffilfey, Jr., Senior Vice President of Human Resources for Flowers Foods, Inc.—Ms. de Para's current boss —Ms. de Para currently supervises three human-resource support-staff members; a Payroll Specialist, Human Resources Generalist, and a temporary employee. (Dkt. #46-1, ex. A, ¶6), As their supervisor, Ms. de Para has authority to discipline theses employees. <u>Id.</u> She also has the authority to hire and fire non-director level employees, (Dkt. #42-1, ex. 1, ¶22), investigate employee and union complaints and resolve them on behalf of Holsum. (Dkt. #46-1, ex. A, ¶7).

Plaintiff, who prior to his termination was Ms. de Para's supervisor, describes her responsibilities as merely administrative and ministerial; not permitting discretion. (Dkt. #45, ex. A, ¶08). In his response, Plaintiff denies that Ms. de Parra has hiring and firing authority, the ability to make final decisions, or the authority to bind Holsum bakery. (Dkt.

1  #45, p.10–11). Instead, he claims that she "was and is the Human Resource department's
2  office manager, responsible for ensuring that personnel procedures are followed and that
3  personnel documents are completed and filed." Id. at ex. A, ¶03. These claims directly
4  contradict Defendants assertions that Ms. de Para may hire and fire non-director level
5  employees, resolve employee and union complaints on behalf of Holsum, and discipline the
6  employees she oversees.

7  As an initial matter, this Court is skeptical of Plaintiff's characterization of Ms. de
8  Para's responsibility, as it appears to change depending on his needs. In his Reply in Support
9  of Motion to Remand, Plaintiff argues that as HR Director, he had never seen the
10 Amendment, then writes: "But it gets stranger. "Holsum's current manager of human
11 resources, Nicole de Para, has never seen the document."[3] (Dkt. #27, p.4) (emphasis added).
12 In context, the word "current" is used to suggest an equivalence between Nicole de Para's
13 position with Holsum Bakery with the one previously occupied by Plaintiff. Id. It is
14 implausible that Plaintiff would argue that when he was Director of Human Resources he did
15 not have managerial responsibility. Now, however, that suggesting Ms. de Para exercises
16 managerial responsibility places counsel in ethical jeopardy, Plaintiff has adopted a
17 completely inconsistent position. This sudden reversal discredits his characterization of Ms.
18 de Para's job responsibilities.

19 Additionally, Plaintiff's beliefs concerning Ms. de Para's job responsibilities are based
20 on his experiences as her supervisor, but the *ex-parte* contact occurred after he had been
21 fired. Since Holsum fired Plaintiff, the evidence demonstrates that Ms. de Para's job
22 responsibilities have changed. For example, in a recent union negotiation, she was part of
23 a group that developed company policies and acted as a Company Representative on the
24 Bargaining Committee, and also acted as the company's spokeswoman on benefit proposals
25 (Dkt. #46, ex. A, ¶5). Additionally, Defendants have provided the Court with an email Ms.

---

[3]Plaintiff based this assertion on the *ex-parte* communication that is the subject of this Order.

de Para wrote to Ed Eiselle, Holsum Bakery's President, complaining that after Plaintiff's firing she could "no longer move at the pace required to hold down a "director's" and "manager's" responsibilities. The workload has got so overwhelming since . . . Hank's [the Plaintiff's] departure." (Dkt. #46, ex. A-1). So, even if Plaintiff's characterization of Ms. de Para's job accurately reflects her responsibilities when he was her boss, which this Court doubts, it does not accurately characterize her current position.

Accordingly, this Court finds the evidence presented by Defendants accurately describe Ms. de Parra's job responsibilities and authority. It makes clear that in certain realms—hiring and firing non-director level employees and resolving employee and union disputes—Ms. de Parra has the ability to bind or act on behalf of Holsum Bakery. Accordingly, she is a managerial employee that exercises managerial responsibility on behalf of the organization.[4] Therefore, this court finds that Mr. Williams knew, or should have known that Ms. de Para's was a person with managerial responsibility that should not have been communicated with *ex-parte,* and that Mr. Williams' communications with her violated Rule 4.2.[5]

---

[4] Had this Court taken a different approach in defining "managerial responsibility," it would have followed the lead of its sister court in the District of Kansas and relied on a "general, common-sense definition of manager." Hammond v. City of Junction City, 167 F.Supp.2d 1271, 1285 (D.Kan. 2001) A manger is "[a] person who administers or supervises the affairs of a business, office, or other organization." BLACK'S LAW DICTIONARY (8th ed. 2004); see Hammond, 167 F.Supp.2d at 1285 (using Black's Law Dictionary to define managerial responsibility). Under this definition, the Court's decision would have been the same, as Ms. de Para both supervises employees and administers many of Holsum's human-resources programs. See, e.g., Orlowski v. Dominick's Finer Foods, Inc., 937 F.Supp. 723, 728 (N.D.Ill.1996) (holding that hiring, scheduling work shifts, and recommending terminations are managerial responsibilities);

[5] That Mr. Williams knew what he was doing was wrong is supported by Ms. de Para's declaration. In it, she states that Mr. Williams told her that "opposing counsel would be very upset if they knew he was even talking to me" and that they "would not be pleased with [the] meeting without their knowledge and would definitely [sic] furious upon discovery of the [the] engagement." (Dkt. #42-1, ex.1,¶19).

### C. Statements that May Constitute an Admission

The third category of employees that may be a "party" under Rule 4.2 are "any person[s] whose statement[s] may constitute an admission on the part of the organization." "An employee's statement may constitute an admission on the part of the organization." Lang, 170 Ariz. at 605. A statement is an admission for the purposes of Rule 4.2 if it constitutes an admission by a party-opponent under Arizona Rule of Evidence 801(d). State ex rel. Arizona Dept. of Health Services v. Gottsfield 213 Ariz. 583, 586 (App. Div. 1 2006). Under Rule 801(d)(2)(D), "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is an admission by a party-opponent.

In her affidavit, Ms. de Para stated that during her time at Holsum she had never seen the Amendment, despite the fact it was normal for her to review and file such documents, and that "on numerous occasions (most recently) I have been asked to locate such a document [the Amendment] or even assist in possibly referencing any document that could have some possible reference to retention agreements. In all cases above I have been unable to procure any such document." (Dkt. #47, ex. J, p.3). At the time of the *ex-parte* communications, Ms. de Para was under Defendants' employ. The statements contained in the notarized affidavit secured by Plaintiff very clearly concern a matter within the scope of her employment, as she recounts tasks she performed at work, at the request of her superiors, and relating to this lawsuit. Because these statements appear to meet the 801(d) standard, Ms. de Para is a "party" under Rule 4.2, and Plaintiff's counsel violated his ethical obligations when he communicated with her *ex-parte*.

### III. REMEDIES:

#### A. Disqualification

As part of this Court's responsibility for regulating the conduct of attorneys appearing before it, it may decide motions to disqualify counsel. Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980). Disqualification is an extreme sanction and should only be ordered "after careful consideration of the client's rights to be represented by the counsel of her choice, and

the nature and extent of the ethics violation." Palmer v. Pioneer Hotel & Casino, 19 F.Supp.2d 1157, 1162 (D.Nev. 1998). In making such a determination, the Court must balance three factors:

>  (1) the client's interest in being represented by counsel of its choice;
>
>  (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and
>
>  (3) the public's interest in scrupulous administration of justice.

Complaint of Korea Shipping Corp., 621 F.Supp. 164, 169 (D.Alaska 1985) (citing Grahams Service Inc. v. Teamsters Local 975, 700 F.2d 420, 423 (8th Cir.1982)). To preserve the integrity of the judicial system close or doubtful cases should be resolved in favor of disqualification. Id. (citing Faison v. Thornton, 863 F.Supp. 1204, 1216 (D.Nev. 1993)). Because, however, of the "great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation." Korea Shipping Corp., 621 F.Supp at 169. A decision to disqualify is reviewed only for abuse of discretion. Trone, 621 F.2d at 999.

Clearly, Plaintiff has a strong interest in proceeding with the counsel of his choice. While this interest is mitigated slightly by the fact that the case is still in its infancy, the Court finds that the paramount interest in choice of counsel weighs in favor of retention. And, the remaining two factors do not outweigh this consideration. Mr. Williams *ex-parte* communications were clearly wrong and unethical, but the disclosure that occurred in this case—that Ms. de Para was asked to find and could not locate the Amendment—will not substantially and irreparably harm Defendants. This information does not go to the heart of the case. Instead, it is merely a piece of evidence that may be relevant for the purposes of the motion to remand; it is dispositive of nothing. Additionally, while it is impossible to know exactly what Plaintiff, Mr. Williams and Ms. de Para discussed at their meeting, the Court notes that Ms. de Para is not a central figure in this dispute. As a result, it is unlikely

she provided Plaintiff with other information that could prejudice Defendants' case. While this factor tips the scales towards disqualification, it does so only slightly.

Instead, the factor that most weighs in favor of disqualification is the public's interest in the scrupulous administration of justice. There is no doubt that Mr. Williams behaved unethically, and with over 20 years of experience as an attorney, he should have known better. And, in addition to the Rule 4.2 violations chronicled in this Order, the Court has determined that Mr. Williams intentionally declined to disclose his *ex-parte* communications to Defendants, attempting instead to schedule a deposition of Ms. de Para so that he might lawfully obtain the information he learned at the dinner-meeting. He further concealed the meeting by submitting Plaintiff Warren Richard's affidavit. (Dkt. #27-1, ex.B, ¶8–9). In this affidavit, Mr. Richards states that he "spoke with Nicole de Para" and asked her if she had seen the Amendment. Id. He does not mention, however, that this conversation actually took place at a meeting with Ms. de Para, that was also attended by his counsel, and at which a signed affidavit was procured. By so doing, Mr. Williams and Plaintiff misled Defendants and this Court. Such deceptive behavior is unacceptable and it will not be tolerated. Yet, while potentially a matter of concern to the Arizona Bar, is not so egregious as to require the disqualification of counsel, as the substantial prejudice Plaintiff would incur by being forced to obtain new representation outweighs the other considerations.

**B. Other Remedies**

This Court, however, will not allow Plaintiff's ethical violations to go unpunished. District courts may apply a wide range of sanctions to address ethical violations. Kaiser v. AT&T, 2002 WL 1362054 at *8 (D.Ariz. Apr. 15, 2002). "Potential sanctions typically include exclusion of evidence, disqualification, dismissal, and imposition of costs and fees." Id. (citing Palmer, 19 F.Supp.2d at 1167–68). Here, Defendants have requested that Plaintiff should be barred from using any statement, documentation, or information gained from the *ex-parte* communication, and that he surrender an notes, memos, copies, or other documents memorializing it. Additionally, Defendants ask that this Court award reasonable attorneys'

1  fees and costs associated with investigating and responding to the inappropriate *ex-parte*
2  communications. The Court will grant both of these requests.

3  **IV:   OUTSTANDING MOTIONS**

4  Now that this ethical dispute has been resolved, the Court must resolve Plaintiff's
5  outstanding Motion to Remand to State Court. (Dkt. #16) and Motion for an Evidentiary
6  Hearing (Dkt. #47). Given the disagreement among the Parties concerning the Amendment,
7  an evidentiary hearing will be necessary in this case. Based on the evidence in the Court's
8  possession, however, it finds that the Amendment existed prior to and was not created by the
9  Defendants for purposes of this litigation. Accordingly, the subject of the evidentiary
10 hearing will be limited to evidence concerning whether or not Holsum Bakery adopted or
11 implemented the Amendment such that it became part of the Plan. Finally, because Plaintiff
12 was given an opportunity to conduct discovery concerning the Amendment, and because of
13 the pivotal role it plays in this case, the Court will withdraw its previous Order granting
14 Plaintiff's Motion to Strike the Amendment. (Dkt. #20).

15 **Accordingly,**

16 **IT IS ORDERED** granting in part and denying in part Defendants' Motion For
17 Disqualification of Plaintiff's Counsel for Improper *Ex Parte* Communication in Violation
18 of Ethical Rule 4.2. (Dkt. #42)

19 **IT IS FURTHER ORDERED** excluding from any future proceedings any and all
20 documents and evidence that are the product of counsel's *ex-parte* contacts.

21 **IT IS FURTHER ORDERED** that Plaintiff's counsel surrender to Defendant all
22 documentation, including, but notes, memos, and copies, that is related to or a consequence
23 of counsel's *ex-parte* communications with Ms. de Para.

24 **IT IS FURTHER ORDERED** granting reasonable attorneys' fees to Defendants for
25 costs incurred. Defendants shall submit an application therefore supported by an appropriate
26 schedule of fees and costs, together with an appropriate affidavit within ten days of service
27 of this order. Failure to timely file such an application shall be deemed to waive any claim
28 to an award of fees and costs related to this matter. Plaintiff's counsel shall file any

opposition to the application for fees and costs within 10 days from the service of the application.

**IT IS FURTHER ORDERED** within 20 days of the service of this order, Plaintiff and Defendants' counsel shall jointly cause the delivery of a copy of this order to the appropriate authority within the Arizona State Bar for whatever further investigation, review, or action it may deem appropriate.

**IT IS FURTHER ORDERED** withdrawing the Court's previous Order granting Plaintiff's Motion to Strike the First Amendment (Dkt. #20) and denying Plaintiff's Motion to Strike. (Dkt. #17).

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for an Evidentiary Hearing (Dkt. #47) for the purpose of presenting evidence concerning whether or not Defendants did, in fact, implement the Amendment.

**IT IS FURTHER ORDERED** setting this matter for Evidentiary Hearing on November 23, 2009 at 3:00 p.m.

DATED this 5th day of November, 2009.

_____
Mary H. Murguia
United States District Judge