**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Warren N. Richards, IV, | No. CV09-00418-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. |  |
| Holsum Bakery, Inc.; Flower Foods, Inc., |  |
| Defendants. |  |

Plaintiff Warren Richards, IV, has filed a Motion to Remand to State Court. (Dkt. #16). After reviewing the pleadings, and determining that oral argument is unnecessary, the Court issues the following Order.

**I.  BACKGROUND**

On February 9. 2009, Plaintiff Warren N. Richards, IV, filed suit against Defendants in Superior Court of Arizona, Maricopa County, alleging breach of contract and seeking recovery of back salary and healthcare benefits. (Dkt. #1, p.1) On March 02, 2009, Defendants' filed their Joint Notice of Removal, invoking this Court's federal-question jurisdiction based on its belief that Plaintiff based his claim on Holsum's 2007 employee severance-benefit plan governed by the Employee Retirement Income Security Act (ERISA) Id. at 2, 4–7. Defendants filed their respective answers to Plaintiff's complaint on March 03, 2009. (Dkt. #s 5 & 6)

Plaintiff filed his Motion to Remand to State Court on April 01, 2009, asserting that his claim was not predicated on the 2007 Plan, but on a retention-benefits memorandum (the Memo) sent to him by Holsum Bakery's President Ed Eisele. (Dkt. #16, p.1–2). Two days before Plaintiff's remand motion was due, on March 30, 2009, Defendants filed a Supplement to Joint Notice of Removal, informing the Court that the First Amendment to the 2007 Holsum Employee Benefits Plan was inadvertently not included in its original removal filing. (Dkt. #15, p.1). In response, on April 01, 2009, Plaintiff filed a Motion to Strike Defendants' supplemental motion, arguing, pursuant to 28 U.S.C §1446, that it was untimely. On April 02, 2009, the Court granted Plaintiff's Motion to Strike and vacated the Rule 16 scheduling conference pending its decision on the Motion to Remand. (Dkt. #20).

On May 13, 2009, Defendants filed a Motion for Protective Order and/or Motion to Quash. (Dkt. #32). The Motion stemmed from Plaintiff's attempts, over the objection of Defendants, to depose Holsum employees Nichole De Parra, Ed Eisele, and Frank Coffey concerning the First Amendment to Holsum's pre-existing ERISA plan. Id. at 2–4. On June 02, 2009, this Court granted in part and denied in part Defendants' motion, allowing limited written discovery concerning subject matter jurisdiction to be completed within twenty days of the Court's order, with any motions for an evidentiary hearing to be filed no later than ten days after that. (Dkt. #39). Plaintiff filed a Motion for Evidentiary Hearing on July 7, 2009. (Dkt. #47). On November 5, 2009, this Court granted Plaintiff's Motion for Evidentiary Hearing. (Dkt. #49). A hearing was held on November 23, 2009.

**II. STANDARD**

The removal statute authorizes a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In other words, "[o]nly state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The party invoking the removal statute bears the burden of establishing federal jurisdiction. See Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988).

As a general rule, in determining whether an action arises under federal law, the court is bound by the "well-pleaded" complaint rule, which allows for the exercise of federal jurisdiction only where a federal question is presented on the face of the complaint. Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243 (9th Cir. 2009). The Supreme Court, however, has carved out an exception to the well-pleaded complaint rule where "Congress [has] so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987). Claims arising under ERISA fall within this exception. Id. ERISA, "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." Collins v. Ralston Purina Co., 147 F.3d 592, 595 (7th Cir. 1998). The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). The presumption against removal means that "the defendant always has the burden of establishing that removal is proper." Id.

### III. DISCUSSION

#### A. Motion to Remand

Plaintiff's motion to remand is predicated on his belief that the Retention Benefits Memorandum ("Memo") received by Plaintiff on August, 8, 2009, is a freestanding promise of benefits, unrelated to and separate from Holsum's 2007 Severance Benefit ERISA Plan ("2007 Plan"). (Dkt. #16, p.7–10). Consequently, Plaintiff argues that his contract claim should not have been removed from state court, as it is unrelated to and wholly separate from the 2007 Plan. Id. Defendants, on the other hand, dispute Plaintiff's characterization of the Memo, arguing instead that it merely summarized the 2007 Plan as amended by a new benefits-retention program ("Amendment"). (Dkt. #21, 15–17). And, as a result, Plaintiff's claim for benefits suit is actually based on an ERISA Plan—the 2007 Plan as altered by the Amendment —and properly before this Court. Id.

/ / /

**B. Amendment or Separate Agreement**

As a first step, this Court must determine whether or not the Memo is a freestanding promise of benefits. If the answer to that inquiry is 'yes', it must decide if the Memo's provisions render it an ERISA Plan. See Crews v. Gen. Am. Life Ins. Co. 274. F.3d 502 (8th Cir. 2001) (overturning district court's decision that a promise of benefits was an attempt to amend the company's pre-existing ERISA plan, then considering whether the promised benefits themselves constituted an ERISA plan); Velarde v. Pace Membership Warehouse, 105 F.3d 1313 (9th Cir. 1997) (considering whether agreement providing employees with severance and a stay-on bonus was an ERISA plan). If, however, the promises made in the Memo "were simply an attempt to amend the existing plan, then it follows that they were based on that plan" and Plaintiff's state-law claim is preempted. Id. at 505.

Despite Plaintiff's protestations to the contrary, this Court has no difficulty whatsoever concluding that the Memo was not a freestanding, one-time offer of benefits. Instead, it is very clearly a summation of changes made to the 2007 Plan by the Amendment. The plain language of the Memo dictates such a conclusion. It states: "the Company [Holsum Bakery], with the approval of Flower Foods, has implemented a retention bonus program that is provided to you **through the Holsum Bakery, Inc. Severance Benefit Plan Non-Union (the "Plan")**." (Dkt. #27-1, ex.A) (emphasis added). The meaning of this passage could not be clearer; Holsum intended the retention benefits outlined in the Memo to be administered as part of the Plan.

This conclusion is buoyed by another sentence which reads: "In the event of a conflict, the terms of the plan control." Id. Plaintiff argues that the "in the event of a conflict" sentence should be understood as incorporating by reference portions of the 2007 Plan into the retention-benefits offer made in the Memo. (Dkt. #16, p.8) This is incorrect. Plaintiff neglects to mention, or willfully ignores, the sentences that follow and preceded the sentence. They read in full: "Please note this memo **is intended to be a summary only**. In the event of a conflict, the terms of the plan control. For your convenience, I attached **a copy of the Plan and the First Amendment to the Plan.**" (Dkt. #27-1, ex.A) (emphasis added).

Placed in the proper context, it is clear that the "in the event of a conflict" language does not incorporate any part of the Plan by reference. Instead, it is meant to inform the reader that any discrepancies between the benefits as *summarized* in the Memo and the Plan must be resolved in favor the Plan as amended by the Amendment. Additionally, the fact that the Memo is intended "to be a summary only" further discredits Plaintiff's assertion that it, and it alone, is a free-standing offer of benefits. Id.

The facts of the instant case then are very different from those the Eighth Circuit considered in Crews. In that case, the company "did not even mention the severance pay plan when promising the "stay-on bonus" and the court was unable to find any evidence in the record "linking them to each other." Crews, 274 F.3d at 805. Here, as the Court has just explained, the Memo explicitly links the offer of benefits to the 2007 Plan and came with an attached copy of that Plan and the Amendment. Instead, this case is much more like the situation in Stearns v. NCR Corp.,297 F.3d 706, 711 (8th Cir. 2002). In that case, the Eight Circuit found that an offer of health care benefits was not a free-standing offer of benefits because the documents offering the benefits advised beneficiaries to "refer to [the ERISA plan] booklet ... for the details of the [program,]" and documents by which employer adopted the program "confirm[ed] that it was an amendment to the existing employee benefit plans." Id. In the instant case, the Memo refers to the 2007 Plan and the Amendment and, as is discussed *infra*, the document by which Holsum adopted the Amendment makes clear it is an amendment to the 2007 Plan. Accordingly, this Court finds that the Memo is not a free-standing offer of benefits, but merely a summary of changes Holsum made to the 2007 Plan by way of the Amendment.

**C. Formal Adoption**

Alternatively, in his Motion for an Evidentiary Hearing, Plaintiff claims that the Memo—not withstanding its connection to the 2007 Plan—must be treated as a freestanding offer of benefits because Holsum never actually adopted the Amendment. See (Dkt.# 47) In other words, Plaintiff contends that the Memo, and the retention-benefits offered therein, does not relate to an ERISA plan because it promises benefits found only in the amended

version of the 2007 Plan, a version of the plan that Holsum never implemented. Defendants, on the other hand, assert that Holsum properly amended and implemented the amended verison of the Plan. (Dkt. #48)

"[A]ny modification or amendment to an ERISA plan can be implemented or applied only after the amendment has been appropriately adopted in a formal, complete and written form." Smith v. National Credit Union Admin. Bd. 36 F.3d 1077, 1081 (11th Cir. 1994). Section 402(b)(3) of ERISA requires that every employee benefit plan provide "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." "The provision requires only that there *be* an amendment procedure" that identifies the procedure for amending the plan and the person or company who has authority to do so. Curtiss Wright Corp. v. Schoonejongen, 514 U.S. 73, 80, 78–79 (1995). "[T]he literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an amendment procedure." Id. at 80. In Curtiss-Wright, the Supreme Court held that an employee-benefits amendment clause stating, "The Company reserves the right at any time to amend the plan," satisfied section 402(b)(3) because it identified the person with authority to amend the plan—the company—and the procedure for amending the plan—a unilateral company decision. Id. at 80–81.

Section V of the 2007 Plan, entitled "Amendment and Termination", reads:

> The Company reserves the right at any time for any reason being suitable to the Company, in its sole discretion, by its act alone without notice and without the consent or approval of any person, to terminate, alter, amend, or modify, in whole or in part, the Plan.

(Dkt. #27, ex.1, p.3). The 2007 Plan, like the one in Curtiss-Wright, vests amendment power in the Company pursuant to a unilateral company decision. In evaluating Holsum's compliance with the Plan's amendment procedure, this Court is bound only by the rule: "Whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." Id. at 85. This exhortation, contrary to Plaintiff's arguments, does not mandate that a company adopt amendments in accordance with the same procedures and formalities used in implementing its ERISA Plan, merely that it comply with

- 6 -

the plan's amendment procedure, whatever that may be. See Winterrowd v. American General Annuity Ins. Co., 321 F.3d 933, 937 (9th Cir. 2003) ("These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means."). Therefore, this Court must decide, pursuant to applicable corporate law principles, whether the Company did, in fact, amend the Plan to include the First Amendment. Curtiss Wright, 514 U.S. at 85; see Winterrowd 321 F.3d at 937 (applying corporate law principles in determining whether or not company adopted amendment to its plan).

Mindful of the controversy surrounding the Amendment, on November 23, 2009, this Court held an evidentiary hearing, providing both Parties with an opportunity to introduce evidence concerning whether or not Holsum implemented or adopted the Amendment. The evidence brought forward at the hearing corroborated Defendants' position; that Holsum did, in fact, adopt the Amendment. At this hearing, the Court admitted into evidence a document signed by Ed Eisele, Holsum's President and sole Director, on July 31, 2008, and labeled "Action by Written Consent of Sole Director," ("Consent"). (Ex. 4). The plain language of the Consent clearly calls for the adoption of the Amendment, stating: "NOW, THEREFORE BE IT RESOLVED . . . that the amendment to the Severance Plan [is] hereby approved and adopted." And, according to the testimony of Thomas Hoecker, the attorney hired by Holsum to help it modify its 2007 Plan in anticipation of its merger with Flower Foods, his office prepared the Consent, at least in part[1], for the purpose of allowing Holsum to officially implement the Amendment. And, at the evidentiary hearing, Mr. Eisele testified, under oath, that the signature on the document is his, and he did, in fact, sign it on July 31, 2008.

The Consent proves that Holsum adopted the Amendment. First, it demonstrates that Holsum complied with the 2007 Plan's Amendment procedure. Under the 2007 Plan's amendment clause, only the "Company" may amend the Plan. At the time he signed the resolution, Mr. Eisele was the President and sole Director of Holsum Bakery. Accordingly, he had authority to act on the Holsum's behalf. And, in exercising that authority, he further

---

[1] The Consent did not focus solely on the Amendment.

1 followed the 2007 Plans's amendment procedure, as his decision to adopt the Amendment
2 through the Consent was a unilateral company action. Second, the Consent complies with
3 the applicable corporate law principles, namely Section 10-821 of the Arizona Revised
4 Statutes which authorizes corporate directors to take actions that would otherwise be taken
5 at a directors meeting "without a meeting if the action is taken by all of the directors" so long
6 as it is "evidenced by one or more written consents describing the action taken, signed by
7 each director and included in the minutes or filed with the corporate records reflecting the
8 action taken." Such an action becomes effective when the last director signs the consent.
9 Id. The Consent is very clearly a consent that describes the action Holsum wanted to
10 take—the adoption of the Amendment—and it is signed by Holsum's sole Director, Mr.
11 Eisele. Accordingly, it became effective on July 31, 2008, the day Mr. Eisele signed it, and
12 eight days before Plaintiff received the Memo.

Because Holsum followed the 2007 Plan's amendment procedure and A.R.S. 10-821, this Court finds that the Amendment was part of the 2007 Plan at the time Plaintiff received the Memo. Defendants, therefore, have met their burden. It is clear that the benefits upon which Plaintiff's case is based are part of an ERISA plan, and, as a result, removal from state court was proper.

**Accordingly**

**IT IS HEREBY ORDERED** denying Plaintiff's Motion to Remand to State Court. (Dkt. #16).

**IT IS FURTHER ORDERED** setting a Rule 16 Scheduling Conference on January 25, 2010 at 4:00 p.m.

DATED this 9th day of December, 2009.

_____
Mary H. Murguia
United States District Judge

- 8 -