1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Warren N.  Richards, IV,                 )   No.  CV 09-418-PHX-MHM
                                             )
10              Plaintiff,                    )   **ORDER**
                                             )
11   vs.                                      )
                                             )
12                                            )
    Holsum Bakery, Inc., and Flower Foods,)
13   Inc.,                                    )
                                             )
14              Defendants.                   )
                                             )
15   _____)

16

17          Currently pending before the Court are Plaintiff Warren N.  Richard's Motion to

18   Remand Re Wrongful Termination, (Doc.  75), and Motion to Set Aside Court Order

19   (Document 49).  (Doc.  82).  Having considered the Parties' briefs and determined that oral

20   argument is unnecessary, the Court issues the following Order.

21   **I.      BACKGROUND**

22          On February 9. 2009, Plaintiff Warren N. Richards, IV, filed suit against Defendants

23   in Superior Court of Arizona, Maricopa County, alleging breach of contract, violation of

24   Arizona Revised Statutes ("A.R.S.") § 23-355, and the breach of the covenant of good faith.

25   (Doc.1).  On March 02, 2009, Defendants' filed their Joint Notice of Removal, invoking this

26   Court's federal-question jurisdiction based on their belief that Plaintiff's contract claim was

27   predicated on Holsum's 2007 employee severance-benefit plan ("Plan"), which they claimed

28   was governed by the Employee Retirement Income Security Act (ERISA).   Plaintiff filed

1  a Motion to Remand to State Court on April 01, 2009, asserting that his claim was not
2  predicated on the Plan, but on memorandum ("Memo") sent to him by Holsum Bakery's
3  President Ed Eisele.  (Doc. 16).  Two days before Plaintiff's remand motion was due, on
4  March 30, 2009, Defendants filed a Supplement to Joint Notice of Removal, informing the
5  Court of a First Amendment ("Amendment") to the 2007 Plan, which was inadvertently not
6  included in its original removal filing.  (Doc. 15).  In response, on April 01, 2009, Plaintiff
7  filed a Motion to Strike Defendants' supplemental motion, arguing, pursuant to 28 U.S.C
8  §1446, that it was untimely.  On April 02, 2009, the Court granted Plaintiff's Motion to
9  Strike and vacated the Rule 16 scheduling conference pending its decision on the Motion to
10 Remand.  (Doc. 20).  In the same order, the Court allowed for limited discovery concerning
11 subject matter jurisdiction—i.e. whether the Amendment was authentic or a fabrication—to
12 be completed within twenty days, and directed that any request for an evidentiary hearing by
13 Plaintiff should be made no later than ten days thereafter.  (Id.).

14     On July 8, 2009, Plaintiff filed his Request for Evidentiary Hearing, in which he
15 acknowledged the existence of the Amendment, but argued that it had never been adopted
16 as part of the Plan.  (Doc. 47).  Having determined that the question of whether or not the
17 Amendment was adopted might well be determinative of Plaintiff's remand motion, this
18 Court withdrew its previous Order granting Plaintiff's Motion to Strike and granted
19 Plaintiff's Request for Evidentiary Hearing concerning whether or not Defendants
20 implemented or adopted the Amendment.  (Doc. 49)  The evidentiary hearing was held on
21 November 23, 2009.  On December 10, 2009, this Court issued an Order denying Plaintiff's
22 Motion to Remand, finding that the Memo was not a freestanding offer of benefits, but
23 instead was a summary of the Amendment to the Plan, and that the Amendment had been
24 adopted in compliance with applicable ERISA law.  (Doc. 59).  As a result, the Court held
25 that Plaintiff's contract claim was preempted by ERISA and removal was proper.  (Id.).

26     On January 25, 2010, the Court held a Rule 16 Scheduling Conference.  At the
27 scheduling conference the Court learned that Plaintiff, that same day, had filed a second
28 Motion for Remand.  (Doc. 66–67).  The Court ordered expedited response and reply

1   concerning the new remand motion.  (Doc.67).  In addition, the Court directed Plaintiff to

2   file an amended complaint, if he so desired, within sixty days.  (Id.).  On March 26, 2010,

3   Plaintiff filed his First Amended Complaint, (Doc.72), which Defendants answered on April

4   9, 2010.  (Doc.73).  In his First Amended Complaint, Plaintiff makes claims for wrongful

5   termination pursuant to A.R.S. § 23-1501 and for failure to pay wages under  A.R.S. § 23-

6   350 et seq..  (Id.).  Plaintiff no longer asserts breach of contract, the claim upon which this

7   Court rested its finding that federal court jurisdiction was proper.

8        Because Plaintiff filed his First Amended Complaint after he had filed his second

9   Motion for Remand, the Court denied that motion, but with leave to file another remand

10  motion.  (Doc. 74).  In so doing, the Court sought to ensure that both Parties directed their

11  legal arguments with respect to remand towards the current complaint.  Defendants filed the

12  instant Motion to Remand on June 25, 2010, (Doc. 75), Defendants responded, (Doc. 77)

13  and the motion became fully briefed on July 22, 2010.  (Doc. 78).

14       Additionally, on August 17, 2010, Plaintiff filed the instant  Motion to Set Aside

15  Court Order (Document 49).  (Doc. 82).  In this motion, Plaintiff requested that the Court

16  set aside its previous Order finding Plaintiff's former attorney, Daryl Williams, to have

17  violated Arizona Ethics Rule 4.2 be set aside.  Defendants responded in opposition on

18  September 3, 2010, (Doc. 83),  and the motion became fully briefed on September 23, 2010.

19  (Doc. 85).

20  **II.    STANDARD**

21       The removal statute authorizes a defendant to remove to federal court "any civil action

22  brought in a State court of which the district courts of the United States have original

23  jurisdiction." 28 U.S.C. § 1441(a).  In other words, "[o]nly state court actions that originally

24  could have been filed in federal court may be removed to federal court by the defendant."

25  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  The party invoking the removal

26  statute bears the burden of establishing federal jurisdiction. See Ethridge v. Harbor House

27  Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988). The removal statute is strictly construed,

28  and any doubt about the right of removal requires resolution in favor of remand. Gaus v.

1  <u>Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir.1992). The presumption against removal means that
2  "the defendant always has the burden of establishing that removal is proper." <u>Id.</u>

3       As a general rule, in determining whether an action arises under federal law, the court
4  is bound by the "well-pleaded" complaint rule, which allows for the exercise of federal
5  jurisdiction only where a federal question is presented on the face of the complaint. <u>Moore-</u>
6  <u>Thomas v. Alaska Airlines, Inc.</u>, 553 F.3d 1241, 1243 (9th Cir. 2009). The Supreme Court,
7  however, has carved out an exception to the well-pleaded complaint rule where "Congress
8  [has] so completely pre-empt[ed] a particular area that any civil complaint raising this select
9  group of claims is necessarily federal in character." <u>Metropolitan Life Ins. Co. v. Taylor</u>,
10  481 U.S. 58, 64 (1987). Claims arising under ERISA fall within this exception. <u>Id.</u>
11  "Section 514(a) of ERISA provides that its provisions 'shall supersede any and all State laws
12  insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA.
13  <u>Campbell v. Aerospace Corp.</u>, 123 F.3d 1308, 1311 (9th Cir. 1997) (quoting 29 U.S.C. §
14  1144(a)). "A state law may relate to a plan 'even if the law is not specifically designed to
15  affect such plans, or the effect is only indirect.'" <u>Id.</u> (quoting <u>Ingersoll-Rand v. McClendon</u>,
16  498 U.S. 133, 139 (1990)).

17  **III.   DISCUSSION**

18       Plaintiff's First Amended Complaint ("Complaint") states two causes of action. The
19  first is a state law wrongful termination claim under A.R.S. §23-1501, and the second is a
20  state law claim for unpaid wages pursuant to A.R.S. §23-350 et seq.. Among the damages
21  sought by Plaintiff pursuant to these claims are lost wages. Plaintiff includes among those
22  wages "change-in-control pay equaling two years salary, and the payment of life and health
23  insurance premiums for two years." Because Plaintiff's Complaint omits any reference to the
24  Plan as Amended, the Court must point out that the change-in-control pay and the health and
25  life insurance premiums are the benefits provided through the Amendment to the Plan. For
26  the purposes of the forthcoming discussion, the Court will refer to these benefits collectively
27  as the "change-in-control benefits."

28      **A.   Plaintiff's Wrongful Termination Claim Is Not Preempted by ERISA**

- 4 -

1    Plaintiff alleges that Defendants wrongfully terminated him in retaliation for
2  whistleblowing, an action which is prohibited by A.R.S. §23-1501.  In determining whether
3  a state law cause of action for wrongful discharge is preempted by ERISA, the Ninth Circuit
4  focuses "on the employer's alleged motivation in terminating the employee."  Campbell v.
5  Aerospace Corp., 123 F.3d 1308, 1312 (9th Cir. 1997).  "[A] claim is preempted when the
6  complaint alleges that the employer had a pension-defeating motive in terminating the
7  employment." Id. (internal quotation omitted); Karambelas v. Hughes Aircraft Co., 992 F.2d
8  971, 974 (9th Cir. 1993) ("[When] the loss of ERISA benefits [i]s a result of rather than a
9  motivation for a wrongful discharge, there [i]s no cause of action under ERISA.").  The mere
10  loss of benefits as a consequence of termination does not give rise to ERISA preemption.
11  Id. at 1312.  In short, the Ninth Circuit recognizes "a discernible and critical difference
12  between an employer who 'knows' that the obvious consequences of terminating an
13  employee for whatever cause include the loss of benefits and one who is 'motivated' to
14  terminate an employee for purposes of saving money or destroying the employee's benefits."
15  Id. at 1313.  The latter scenario merits removal and ERISA preemption; the former does not.
16    Plaintiff's wrongful termination claim falls within the latter category of cases.  The
17  termination motive alleged by Plaintiff is whistleblowing.  His cause of action mentions the
18  change-in-control benefits, but only to note their loss was a consequence of the wrongful
19  termination.  (Complaint, ¶23).  Defendants argue, however, that certain factual allegations
20  incorporated into Plaintiff's wrongful termination claim evidence a benefits defeating motive
21  for Plaintiff's termination.  Specifically, Defendants point to paragraphs 16 and 17 of
22  Plaintiff's Complaint, which state respectively that "Richards was entitled to receive the
23  following at the time of his termination: two years of salary equaling $280,000.00 pursuant
24  to the change in control program, along with health insurance and life insurance benefits for
25  two years, valued at $34,350.00; his bonus payable in 2009 in the amount of $25,200.00,"
26  and "When Richards requested payment of these entitlements, Eisele, in bad faith, created
27  a pretextual basis for a "cause" to terminate Richards and refused to pay the change in
28  control compensation." (Complaint, ¶¶16, 17).  These allegations, Defendant contends,

1    affirmatively demonstrate that Plaintiff has alleged Defendants terminated Plaintiff to avoid

2    their obligations under the Plan.  Plaintiff responds by pointing out that he asked for the

3    change-in-control benefits *after* Defendants had terminated his employment and, as a result,

4    Eisele's allegedly pretextual creation of "cause" for Plaintiff's termination cannot be

5    construed as a motivation for the termination itself.

6        Plaintiff's allegations with respect to Eisele's conduct suggest the presence of a

7    benefits defeating motive in Defendants' decision to terminate Plaintiff.  After all,

8    terminating Plaintiff's employment then claiming it was for cause would be one obvious

9    manner by which to deprive Plaintiff of the change-in-control benefits.  Plaintiff's

10   Complaint, however, makes no such allegation, and given the dictates of the well pleaded

11   complaint rule, this Court is loath to find federal jurisdiction based on merely an inference,

12   especially when discovery may in fact demonstrate that events occurred as alleged by

13   Plaintiff.  Accordingly, as currently plead, the Court finds that Plaintiff has not alleged a

14   benefits defeating motive for his termination that would require this Court to hold the

15   wrongful termination claim is preempted by ERISA.

16       More generally, Defendants also argue this claim is preempted by ERISA because the

17   claim is "just another mechanism whereby [Plaintiff] seeks recovery of 'change in control

18   benefits.'"  As the Court has explained, this Court may only evaluate Plaintiff's allegations

19   with respect to Defendants' motivation for terminating Plaintiff's employment. The

20   termination motive expressly alleged in this claim is plainly "retaliation for whistleblowing,"

21   not destruction of benefits,  (Complaint, ¶22).  Furthermore, the fact that Plaintiff seeks

22   damages which may cause this Court to refer to an ERISA plan does not merit preemption.

23   Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137, 1143 (9th Cir. 2002) ("[A] claim

24   does not 'relate to' an ERISA employee benefit plan simply because a court would refer to

25   the plan in calculating damages.").  Were it otherwise, "ERISA would preempt most

26   garden-variety wrongful termination suits because the value of employee benefits would be

27   relevant in calculating damages."  Accordingly, where "where a plaintiff seeks lost ERISA

28   benefits as a remedy for a state law claim of wrongful termination, the plaintiff has not,

1   solely by reason of seeking such remedy, stated an ERISA claim."   Williams v. Agilent

2   Techs., 2004 U.S. Dist. LEXIS 24255, *7-8 (N.D. Cal. Aug. 5, 2004).  It follows that a

3   plaintiff may recover the monetary value of lost ERISA benefits as part of a state law

4   wrongful termination claim, Id. (indicating approval of the plaintiffs' measure of damages,

5   which includes "the value of health, medical, severance, and other employment benefits

6   plaintiffs state they would have received if they had not been terminated."), where the

7   plaintiff's entitlement to those benefits is not in question. See Pizlo v. Bethlehem Steel Corp.,

8   884 F.2d 116, 120-121 (4th Cir. 1989) (explaining that a plaintiff may recover as damages

9   prospective ERISA benefits he "would have been entitled to.").

10          Having so explained, Plaintiff's Complaint is problematic insofar as it assumes

11   Plaintiff's entitlement to the change-in-control benefits that Plaintiff seeks to recover as

12   damages.   The Complaint states that Plaintiff "was entitled" to those benefits "at the time

13   of his termination."   (Complaint, ¶16). Plaintiff's entitlement to the change-in-control

14   benefits, however, is predicated on a favorable application of the Plan, and Plaintiff has not

15   plead any facts or attached any evidence to his Complaint demonstrating that the Plan's

16   administrator awarded or would award Plaintiff those benefits.  Accordingly, for a jury to

17   award Plaintiff the value of these benefits, it would first have to make a determination

18   concerning Plaintiff's entitlement to them, a determination that could only be made by

19   application of the Plan.  Therefore, allowing Plaintiff to recover the value of the change in

20   control benefits pursuant to his wrongful termination claim would, in essence, take the

21   benefits eligibility decision out of the hands of the Plan's administrator and place in the hands

22   of the jury.  Such an outcome is plainly unacceptable as disputes concerning entitlement to

23   ERISA-plan benefits are the type of claim most obviously preempted by ERISA.

24   Accordingly, Plaintiff's wrongful termination claim may proceed under state law, but

25   Plaintiff will not be permitted to use it as a vehicle to bypass decisions which are subject to

26   ERISA, such as a benefits eligibility determination.

27          **B.     Unpaid Wages Claim is Preempted by ERISA**

28          Plaintiff alleges that Defendants owes Plaintiff unpaid wages.  Based on Plaintiff's

demand for judgment, it is clear that among his allegedly unpaid wages Plaintiff counts the change-in-control benefits.. (See Complaint, ¶28 (requesting "payment for all unpaid wages, "including the change in control pay equaling two years' salary, and the payment of life and health insurance premiums for two years")).  Assuming, without deciding, that the change in control benefits qualify as wages under A.R.S. § 23-350(5)[1], to prevail on his claim Plaintiffs must prove more than Defendants' failure to tender the change-in-control benefits; Plaintiff must also prove that Defendants owed him the change-in-control benefits.  See A.R.S. § 23-355 (providing a cause of action where an employer fails to pay "*wages due* any employee" (emphasis added)).  As the Court has already explained, the question of whether or not Defendant owed Plaintiff the change-in-control benefits is clearly disputed by the Parties and will require application of the Plan.  Additionally, Plaintiff alleges that "Eisele, in bad faith, created a pretextual basis for a "cause" to terminate Richards and refused to pay the change in control compensation," while Defendants deny this allegation.  The successful prosecution of Plaintiff's unpaid wages claim, therefore, clearly relates to the Plan, as it will require Plaintiffs to challenge Defendants' determination that Plaintiff was ineligible to receive the benefits.  The fact that Plaintiff will have to secure a favorable interpretation of the Plan to recover the change-in-control benefits counsels in favor of preemption.

For example, in Holland v. Slack, the fourth circuit determined that a claim brought under a North Carolina statute which "essentially requires employers to pay wages due upon termination of employment," was preempted by ERISA because Plaintiff "invoked [it] in pursuit of benefits allegedly due under [his employer's] severance pay plan." 772 F.2d 1140, 1147 (4th Cir. 1985).  Likewise, a District of Louisiana court found that ERISA preempted a state law unpaid wages claim because plaintiff "cannot prosecute his claims without a

---

[1] The term "wages" is defined in  A.R.S. § 23-350(5) as follows: "'Wages' means nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation. Wages include sick pay, vacation pay, severance pay, commissions, bonuses and other amounts promised when the employer has a policy or a practice of making such payments."

1   favorable interpretation and application of an ERISA plan."   Buelow v. Gardner Denver,

2   Inc., 2009 U.S. Dist. LEXIS 122922, *23 (D. La.  Nov. 9, 2009); Cf.  Novak v. Ackley,

3   Ackley & Wise, D.M.D's, P.A., 2006 U.S. Dist. LEXIS 83255, *4 (D. Fla.  Nov. 15, 2006)

4   (finding lost wage claims not preempted by ERISA because "[t]he claims . . . do not

5   implicate or require reference to an ERISA plan to state a claim. Simply put, enforcement of

6   Plaintiff's lost wage claims is independent of any legal rights Plaintiff may have had under

7   the ERISA plan.").  In this case, Plaintiff's unpaid wage claim quite clearly implicates

8   ERISA.  He seeks recovery as unpaid wages of change in control benefits contained in the

9   Plan, which this Court has already determined is governed by ERISA.  Accordingly,

10  Plaintiff's ability to prosecute his §23-355 claim depends almost entirely on a favorable

11  interpretation and application of the Plan.  This claims does not, therefore, present a situation

12  which is "too tenuous, remote, or peripheral a manner to warrant a finding that the law relates

13  to the plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100, 103 (1983).  To the extent it

14  seeks to recover the change-in-control benefits, his second cause of action is preempted by

15  ERISA and removal is proper.  See Sorosky v. Burroughs Corp., 826 F.2d 794, 800 (9th Cir.

16  1987) ("To the extent that this first claim refers to the employee benefit plan, it is

17  preempted.").

18                      **C.    Conclusion**

19          Having determined that Plaintiff's unpaid wage claim is preempted by ERISA and

20  properly before this Court, the Court will exercise supplemental jurisdiction over Plaintiff's

21  wrongful termination claim.  28 USC § 1367(a) ("[I]n any civil action of which the district

22  courts have original jurisdiction, the district courts shall have supplemental jurisdiction over

23  all other claims that are so related to claims in the action . . ..")

24  **IV.   PLAINTIFF'S MOTION TO SET ASIDE COURT ORDER**

25          In this motion, Plaintiff requests that this Court set aside the Order in which it found

26  that Plaintiff's former counsel, Daryl Williams, violated Arizona Rules of Ethics Rule 4.2.

27  As a result, the Court sanctioned Mr. Williams and Plaintiff by awarding Defendants

28  attorney's fees for the time and costs associated with their motion requesting sanctions,

1    excluding evidence obtained through the unethical *ex-parte* contacts, ordering Plaintiff to

2    surrender all documentation related to the *ex-parte* contacts, and ordering Plaintiff deliver

3    a copy of the Court's Order to the Arizona State Bar ("State Bar") for review and whatever

4    action the State Bar deemed necessary. (Doc. 49).   Subsequently, the State Bar has

5    reviewed the Court's Order and declined to take further disciplinary action against Mr.

6    Williams.  In so doing, the State Bar found that Mr. Williams lacked the requisite mental

7    state for a violation of ER 4.2.  It also found, however, that "it appears very likely that [Mr.

8    Williams] conduct was, in fact; prohibited by ER 4.2."  Due to the State Bar's determination

9    that "this matter does not warrant disciplinary action," Plaintiff requests this Court vacate its

10   previous Order.  The Court declines Plaintiff's request.

11         The Court makes no comment and takes no position concerning the substance of the

12   State Bar's decision not to discipline Mr.  Williams.  The Court's decision to refer the matter

13   to the State Bar of Arizona was not meant to dictate a particular result or suggest that

14   additional discipline was in fact warranted.  Contrary to the State Bar's interpretation of this

15   Court's Order, this Court did not bring charges against Mr. Williams.   As part of its

16   responsibility to regulate the conduct of the attorney's who appear before it, the Court merely

17   found what it determined to be an ethical violation and merely felt it prudent to inform the

18   state bar of this finding.   <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980) ("The primary

19   responsibility for controlling the conduct of lawyers practicing before the district court rests

20   with that court.").  What the State Bar chose to do with that information was the State Bar's

21   prerogative.  This Court, however, will not vacate its finding because  the Ninth Circuit has

22   made it explicitly clear that:

23            Whenever an allegation is made that an attorney has violated his moral and
             ethical responsibility, an important question of professional ethics is raised. It
24           is the duty of the district court to examine the charge, since it is that court
             which is authorized to supervise the conduct of the members of its bar. The
25           courts, as well as the bar, have a responsibility to maintain public confidence
             in the legal profession. This means that a court may disqualify an attorney for
26           not only acting  improperly but also for failing to avoid the appearance of
             impropriety.
27
             The regulation of attorneys appearing before the district court in these matters
28           will be disturbed only when, on review of the record, we can say that the

1    district court abused its permissible discretion.

2    Gas-A-Tron of Arizona v. Union Oil Co., 534 F.2d 1322, 1324-1325 (9th Cir. 1976).  In

3    short, this Court took steps it found, and continues to find, were necessary to maintain the

4    integrity of the proceedings in this case; nothing more, nothing less.

5           Additionally, the Plaintiff's reliance on the doctrine of Younger abstention as a basis

6    for vacating the Court's order is plainly incorrect and borders on frivolous.  In the civil

7    context, Younger abstention is mandated "if the State's interests in the proceeding are so

8    important that exercise of the federal judicial power would disregard the comity between the

9    States and the National Government."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (U.S.

10   1987)  Such interests are hardly at play here. This Court's decision did not interfere or

11   otherwise restrain any state court action.  To the contrary, the Arizona Bar's involvement in

12   this case came about only as a result of this Court's Order, meaning this Court could not have

13   interfered in a state proceeding, and the sanctions issued in this case have in no manner

14   whatsoever invaded the prerogatives of the Bar.

15          **Accordingly,**

16          **IT IS HEREBY ORDERED** denying Plaintiff's Motion to Remand.  (Doc. 75).

17          **IT IS HEREBY ORDERED** denying Plaintiff's Motion to Set Aside Court Order

18   (Document 49).  (Doc. 82).

19          **IT IS FURTHER ORDERED** directing the Parties to file a joint-status report with

20   the Court no later than ten days after the date of this Order.  The joint-status report should

21   be sure to include the next steps the Parties believe need to be taken in this case.

22          **IT IS FURTHER ORDERED** directing the Clerk of the Court to reassign this case.

23          DATED this 22nd day of February, 2010.

24

25

26   _____
                    Mary H. Murguia
27                  United States District Judge

28